**In re MONTCLAIR HOMES, Debtor.**

**Sophie GOSCIENSKI, on Behalf of Marilyn A. FRIER, as Trustee in Bankruptcy for the Estate of Montclair Homes, Inc., Plaintiff,**

v.

**Frank LAROSA, Larosa Realty, Inc., 838 Old Country Road Corporation, Michael Larosa and Montclair Homes, Inc., Defendants.**

**Bankruptcy No. 893–87105–478.**
**Adv. No. 894–8315–478.**

United States Bankruptcy Court,
E.D. New York.

Sept. 5, 1996.

34 C.F.R. § 668.26(d)(1).

Paul C. Garner, New York City, for plaintiff.

Heller & Rosenberg, P.C. by Craig S. Heller, Garden City, NY, for defendant.

Marilyn Frier, Chapter 7 Trustee, Woodmere, NY.

## DECISION ON SETTING ASIDE FRAUDULENT TRANSFERS AND PIERCING THE CORPORATE VEIL

DOROTHY EISENBERG, Bankruptcy Judge.

The Debtor filed a Chapter 7 petition on December 16, 1993 (the "Petition Date"). Marilyn Frier was appointed as the interim trustee in the Chapter 7 case, and at the meeting of creditors held March 29, 1994 she duly qualified as the permanent trustee. The trustee chose not to pursue this adversary proceeding herself, but consented to the plaintiff, acting on the trustee's behalf, bringing suit to recover assets of the estate allegedly transferred fraudulently before the Petition Date.

The adversary proceeding was initiated in August 1994 by Sophie Goscienski (sometimes hereinafter referred to as the "plaintiff"), a creditor of the estate of Montclair Homes, Inc. (the "Debtor"). In the adversary complaint, as amended on December 1, 1994 (the "amended complaint"), the plaintiff, acting on behalf of the trustee, alleges that certain pre-petition transfers of money or property by and among the various corporate and individual defendants during the period September 6, 1990 through October 2, 1992 constituted fraudulent conveyances under Sections 544 and 548(a) of Title 11 of the United States Code (the "Bankruptcy Code") and/or Sections 270–281 of the New York Debtor and Creditor Law ("NYDCL"). Plaintiff seeks to set aside the transfers and recover for the estate funds totaling approximately $1,000,000. Additionally, the plaintiff claims that Frank LaRosa, the Debtor's principal, in making the aforementioned transfers of money or property, breached his fiduciary duties as a corporate director and officer, in violation of Section 720 of the New York Business Corporation Law ("NYBCL"), and that Frank LaRosa was the alter ego of the Debtor and should be held personally liable for its obligations.

The Debtor listed Sophie Goscienski in the petition as the holder of an unsecured claim in the fixed and liquidated amount of $233,440.00. Actually, this creditor is a judgment creditor holding a judgment entered on September 2, 1993 in favor of the plaintiff and against the Debtor in the Supreme Court of the State of New York, which lawsuit is listed in the Debtor's Statement of Financial Affairs. The state court claim for breach of contract was brought by Sophie Goscienski in 1989, when the Debtor failed to satisfactorily perform its obligations to build a house for her in Westbury, New York. For purposes of this adversary proceeding, it is also significant that the Debtor's bankruptcy petition lists no assets whatsoever as of the Petition Date. In the event the Debtor did have assets as of the Petition Date, the plaintiff, a judgment lien creditor, would have a secured claim on those assets. The defendants' proffered defense to the allegations of the plaintiff's amended complaint is that the pre-petition transfers represented repayments of bona fide loans made to the Debtor by Frank LaRosa and the other defendants.

The plaintiff sought discovery and inspection of the books and records of the various related corporate defendants, in order to de-

termine the ownership and control of such entities and the financial transactions in which said entities engaged from their inception until the filing of the Debtor's bankruptcy petition. The plaintiff also sought discovery from the individual defendants to determine the extent of their financial dealings with the Debtor and the other corporate defendants. However, the defendants vigorously contested the breadth and scope of the plaintiff's discovery requests and sought a protective order from the Court. The plaintiff cross-moved to compel defendants to comply with requests for discovery and for other relief, claiming that all of the requested materials bore directly upon the defense that all pre-filing transfers were for repayment of bona fide loans made to the Debtor during its corporate existence. The Court denied defendants' motion for a protective order and granted plaintiff's motion to compel discovery.[1]

In response to further motions by the plaintiff, both pre-trial and during the trial, the Court directed that all books, records and documents not previously produced by defendants must be produced by May 19, 1995 or defendants would be precluded from introducing such materials at trial, either directly or indirectly.

The Court conducted a trial over four days beginning on July 27, 1995. Three witnesses testified on behalf of the plaintiff, including Sophie Goscienski, John Tagliaferro and Valerie Acosta, and the plaintiff also called Frank LaRosa as a witness during her case-in-chief. Frank LaRosa and Bernard Sandler, C.P.A. testified for the defendants.

At the outset, the Court reiterated its ruling that the defendants were precluded from offering any evidence at trial which they failed to produce on or before May 19, 1995. The Court determined that the defendants failed to timely produce any corporate minute books or other corporate records of the Debtor, or of LaRosa Realty, Inc. or 838 Old Country Road Corp. (except for the Debtor's Certificate of Incorporation); any financial statements of the Debtor, nor any documents supporting or used in the preparation of such statements (except for the financial statements for the fiscal years ended March 31, 1989 and 1990, with no supporting documentation); any income tax returns for Frank LaRosa or Michael LaRosa; any income tax returns for 838 Old Country Road Corp.; any financial records of the Debtor for the period between the Debtor's incorporation in 1981 and March 31, 1990 (the starting point of the analysis and review conducted by defendants' witness, Bernard Sandler, C.P.A.); any bank statements of LaRosa Realty or 838 OCR; any of the canceled checks of LaRosa Realty or 838 OCR for the period prior to March 31, 1990; any bank statements or canceled checks of Michael LaRosa; any loan agreements by and between the Debtor and any of the other defendants; or any materials concerning the capitalization of the Debtor or 838 OCR.

---

1. By Order dated March 29, 1995, the Court directed that the following items be produced not later than March 31, 1995:

[a] Corporate minute books of LaRosa Realty and 838 Old Country Road Corp., including minutes of all action taken by the board of directors and shareholders, corporate resolutions and stock transfer ledger;

[b] All financial records, including without limitation, journals, books of account, ledgers, notes, bank statements, account statements, canceled checks or other instruments of payment or indicia of payment, deposit slips, credit memoranda, debit memoranda, loan agreements, proprietary work sheets, work papers, accountants' reports, financial statements, documents and memoranda pertaining to loans made to the debtor by any person, and by the debtor to any of the defendants for the period 1981 through 1993.

[c] All documents concerning the information and capitalization of 838 Old Country Road Corp. and Montclair Homes, Inc., the debtor, including, without limitation, all documents concerning acquisition of an interest in these corporate defendants; the manner in which any contribution or loan was funded; any distributions, return of capital, income, or other money which was received from said corporations.

[d] All annual, monthly, or other periodic financial statements, profit and loss statements, balance sheets and operating statements, and all documents supporting or used in preparation of any such statements concerning the operations of the Debtor between 1981 and 1993.

[e] Corporate and individual U.S. Income tax returns pertaining to the defendants for the years 1989 through 1993. . . .

(Order dated Mar. 29, 1995).

During the course of the trial, the plaintiff brought a motion pursuant to Fed.R.Civ.P. 37(b) seeking certain sanctions against the defendants for failure to comply with prior Court orders compelling production of books, records and documents. A cross-motion for sanctions was filed by the defendants pursuant to Fed.R.Civ.P. 45(b)(1), alleging that plaintiff improperly subpoenaed books and records pertaining to the Debtor from Fleet Bank, formerly Norstar Bank, but failed to give notice of the subpoena to the defendants. The Court granted the plaintiff's motion for sanctions to the extent that defendants were precluded from (i) introducing at trial any documents not produced by May 19, 1995; and (ii) presenting any defenses predicated on the documents not produced. Fed. R.Civ.P. 37(b)(2)(B). The Court acknowledged that plaintiff's failure to give the defendants prior notice of the subpoena was a technical error, but ruled that such error did not rise to the level of misconduct typically sanctioned in bankruptcy cases. The Court found that, because the defendants refused to produce the requested discovery, the plaintiff had no choice but to subpoena the records from the bank. Even if the defendants had been given prior notice and the defendant objected, this Court would have permitted the plaintiff to obtain these records.

The plaintiff challenged the admissibility of testimony by Bernard Sandler, C.P.A., claiming that his testimony would be based partially on his review of certain books, records and/or documents not disclosed to the plaintiff on or before May 19, 1995; the plaintiff also objected to the proffer of Mr. Sandler as an expert witness. The Court, after questioning the witness and permitting the plaintiff to examine Mr. Sandler on *voir dire*, permitted Mr. Sandler to testify and accorded his testimony the weight of that of a certified public accountant who conducted a "review" of the Debtor's books and records for the period April 1, 1990 through March 31, 1993. However, based on Mr. Sandler's own testimony, it is evident that the witness had no personal knowledge of the transactions which form the basis of the complaint and merely based his analysis and review upon the financial statements, ledgers, and other records prepared by Mr. Robert L.

Messa, the prior accountant for the defendants. Mr. Messa did have knowledge of the facts but noticeably was not subpoenaed to testify at trial. The defendants offered no explanation as to Mr. Messa's non-availability to testify, except that defendants' counsel stated on the record that Mr. Messa was uncooperative.

Mr. Sandler, a certified public accountant with experience in real estate and bankruptcy matters, was retained by the defendants to review and analyze the books and records and to prepare a summary of the receipts and disbursements of the Debtor for the three-year period from April 1, 1990 to March 31, 1993 (Tr. 10/18/95, pp. 83–84). Mr. Sandler testified that he reviewed all of the available books and records of the Debtor and certain records of LaRosa Realty and Frank and Margaret LaRosa. He further testified that on March 31, 1990 the Debtor owed approximately $240,800 to Norstar Bank, LaRosa Realty, and the officers of the Debtor (Tr. 10/18/95, p. 98, taped record 11/15/95, taped record 1/19/96). Mr. Sandler prepared a compilation (Exhibit 12), which includes the source materials on which he based his review; more specifically, the compilation contains copies of the Debtor's bank statements for the period from April 1, 1990 through March 31, 1993; copies of certain canceled checks of the Debtor, together with bank deposit slips, credit memos, debit memos, and confirmation of loan advances; photocopies of pages from the Montclair Realty, Inc. Deposit Book; copies of certain home equity line of credit bank statements of Frank and Margaret LaRosa; copies of certain canceled checks from LaRosa Realty; certain LaRosa Realty check stubs; and certain canceled checks of Center Island Construction to the Debtor. In making its findings of fact, the Court has considered defendants' Exhibit 12, except for the section containing selected check stubs of LaRosa Realty, which were not timely produced to the plaintiff.

The Court notes that Mr. Sandler's analysis is incomplete and probably misleading, since the starting point for his "review" was April 1, 1990, a point in time when the Debtor had already been in business for nine

years. Mr. Sandler merely accepted the figure of $240,800 as loans outstanding which he received from Mr. Messa and claims to have verified it by looking at tax returns. Indeed, Mr. Sandler admitted that he did not trace the amount of loans outstanding by reviewing the financial records of the Debtor since its inception in 1981. He further had no personal knowledge as to the capitalization of the Debtor from the inception until the filing of the petition. Although Mr. Sandler's basis for concluding that the Debtor owed $150,000 to Norstar Bank on April 1, 1990 appears to be reliable (Exhibit K—letter dated January 1, 1991 from Norstar Bank to Mr. Frank LaRosa), his conclusion that on April 1, 1990 the Debtor had loans outstanding of $90,800 to Frank LaRosa and the LaRosa related entities appears to be without evidentiary support. In fact, on cross-examination it was brought out that Mr. LaRosa's contemporary records contained in the Montclair Homes, Inc. Deposit Book (Exhibit D) directly contradict Mr. Sandler's figures as to how much was owed to the LaRosa related entities from

time to time during the period April 1, 1990 through March 31, 1993 (taped record 1/19/96) even assuming that monies advanced were loans and not capital contributions. Additionally, Mr. Sandler had no personal knowledge as to whether any of the monies advanced to the Debtor by the LaRosa related entities before April 1, 1990 were in fact capital contributions or loans (taped record 11/15/95).

In making its findings of fact, the Court has considered the entire record, including the bankruptcy petition, all pleadings and motions filed herein, together with the exhibits annexed thereto, the testimony of the witnesses and the documentary evidence admitted at trial.[2] The Court has also considered the subpoenaed records of Fleet Bank, formerly Norstar Bank, certified by the official custodian of those records (the "Certified Norstar Records").[3]

Much of the evidence presented at trial did not correspond to the allegations in the complaint. During the course of the trial, plaintiff's counsel made an oral application that

**2.** *The documentary evidence considered by the Court* includes the tax returns of Montclair Homes, Inc. on Form 1120 for the tax years ended March 31, 1991, 1992 and 1993 (Exhibits A, B and C, respectively); the Montclair Homes, Inc. Deposit Book (sometimes called the "black book") (Plntf's Exhibit D); Norstar Bank Corporate Resolution adopted by Montclair Homes, Inc. on May 5, 1981 (Exhibit E); Norstar Bank Signature Card and Corporate Resolution adopted by Montclair Homes, Inc. on July 16, 1991 (Exhibit F); Norstar Bank Corporate Resolution adopted by Montclair Homes, Inc. on October 27, 1989 (Exhibit G); letter from Vito Valenti, Land Surveyor, to LaRosa Realty dated September 1, 1987 concerning services to be performed at the lot sold to Sophie Goscienski (Exhibit H); copies of canceled checks of Montclair Homes, Inc. for the period February 1990 through October 2, 1992 (Exhibit I); Hempstead Bank Signature Card and Corporate Resolution adopted by Montclair Homes, Inc. on March 15, 1981 (Exhibit J); Fax Cover Sheet of LaRosa Realty, Inc., transmitting letter dated March 6, 1992 from Frank LaRosa to Norstar Bank, with attachments (Exhibit K); Building Permit Application for 232 Division Avenue, Levittown, New York (Exhibit L); Montclair Homes, Inc. checks (Exhibit M); Examination of Montclair Homes, Inc., Judgment Debtor, conducted on September 13, 1993 (Exhibit O); Certified copy of Deed from 838 Old Country Road Corp. to Richard Gomez and Mayra Alverez, dated April 30, 1993 (Exhibit Q); bank statements from Barclay's

Bank regarding the home equity line of credit to Frank and Margaret LaRosa (Exhibit 1); Barclay's Bank canceled checks written on the home equity loan account (Exhibit 2); tax returns of LaRosa Realty, Inc. on Form 1120S for the years ended December 31, 1988 and 1989 (Exhibit 4); Montclair Homes, Inc. bank statements for the period December 1, 1989 through March 31, 1993, together with the canceled checks and debit advices or credit advices that appear on the bank statements (Exhibit 8); two check stub binders of Montclair Homes, Inc. marked B–1 (Checks # 2885–3368, for period 12/28/89 to 7/19/91) and B–2 (Checks # 1001–1443, for period 8/23/91–3/12/93) (Exhibit 9); financial statements of Montclair Homes, Inc. for the fiscal years ended March 31, 1989 and 1990 (Exhibit 10); the Analysis prepared by Bernard Sandler, C.P.A., including the documents relied upon to prepare the analysis (Exhibit 12); and a certified copy of Short Form Order, dated November 9, 1993, and entered on November 10, 1993 by the Supreme Court of the State of New York, Nassau County, dismissing the complaint in the action entitled *John Tagliaferro, Joan Tagliaferro, Thomas Acosta and Valerie Acosta v. Montclair Homes, Inc., La Rosa Realty, Inc. and Frank LaRosa,* Index No. 013248/93, as against defendants La Rosa Realty, Inc. and Frank LaRosa (Exhibit 13).

**3.** The Certified Norstar Records are part of the record, as they were filed as an exhibit to one of the numerous motions for sanctions in this adversary proceeding.

the pleadings conform to the evidence introduced at trial. Under Fed.R.Civ.P. 15(b), made applicable to adversary proceedings by Fed.R.Bankr.P. 7015, the pleadings may be amended to conform to the evidence upon motion of any party at any time. Consequently, the adversary complaint is deemed amended to conform to the evidence presented at trial.

### FACTS

1. Montclair Homes, Inc. is a closely held corporation, incorporated on April 30, 1981, whose sole stockholder is Frank LaRosa (Ch. 7 petition, Tr. 7/27/95, pp. 101, 125–26).

2. Frank LaRosa is the President of Montclair Homes, Inc. and, from time to time since its inception in 1981 to the Petition Date, Margaret LaRosa and Michael LaRosa were officers of the Debtor (Exhibits E, F, G, J).

3. Margaret LaRosa is Frank LaRosa's wife, and Michael LaRosa is Frank LaRosa's son (Tr. 7/27/95, p. 88).

4. At all times since the incorporation of the Debtor Frank LaRosa was a signatory on the Debtor's sole corporate bank account maintained at Norstar Bank and its predecessor and, thus, was authorized to issue the Debtor's checks (Exhibits E, F and G).

5. The Debtor kept no formal corporate records, as evidenced by the fact that the Debtor did not produce a corporate minute book, stock ledger book, stock certificates, or by-laws pursuant to discovery requests.[4]

6. The Debtor was a "spot builder" of residential real estate and had no employees; it had no assets other than the construction projects in process, which were listed on its balance sheet as "inventory" as is the custom in the industry (Tr. 7/27/95, pp. 138–46). Except for two (2) loans from Norstar Bank, and an initial $1,000 in capital, this Debtor had no other capital from its inception other than monies advanced by Frank LaRosa.

7. To finance the purchase and development of construction projects, Frank LaRosa would deposit funds into, or withdraw funds from, the Debtor based upon the current stage of each project (Tr. 7/27/95, pp. 138–46). Frank LaRosa arranged a loan to the Debtor from Norstar Bank in the sum of $150,000.00.

8. Frank LaRosa obtained financing for Montclair Homes, Inc.'s operations from its own line of credit obtained from Norstar Bank and guaranteed by Frank LaRosa; money obtained from the LaRosa Realty Pension Plan; the LaRosa Realty line of credit from Norstar Bank; Frank and Margaret LaRosa's home equity line of credit from Barclay's Bank; and Frank LaRosa's personal funds (Tr. 7/27/95 pp. 138–46).

9. The Debtor prepared no formal loan documents as to any party except for that of Norstar Bank (Tr. 7/27/95, p. 101). There is no evidence of any other loan arrangement between the Debtor and any other party.

10. On March 31, 1990 (the starting point of Mr. Sandler's analysis of the Debtor's corporate records), the Debtor had a $150,000 line of credit with Norstar Bank (Exhibit 10 and taped record, 11/15/95).

11. The Debtor's $150,000 credit line from Norstar was guaranteed by Frank and Margaret LaRosa and collateralized by real property owned personally by Frank LaRosa and Margaret LaRosa and by LaRosa Realty (Certified Norstar Records).

12. Frank LaRosa is the President and controlling stockholder of LaRosa Realty, which was incorporated in 1953 (Tr. 7/27/95, p. 87).

13. LaRosa Realty is affiliated with the Debtor because Frank LaRosa is the controlling stockholder of both entities (Tr. 7/27/95 pp. 87–93).

14. On or about March 31, 1990, LaRosa Realty had a $125,000 line of credit with Norstar Bank (taped record, 11/15/95).

---

**4.** Testimony elicited at the examination of Mr. Frank LaRosa, under oath, on April 25, 1994, pursuant to an Order of this Court dated March 11, 1994 for a Rule 2004 examination of the Debtor, indicated that the corporate minute book, by-laws, stock transfer ledgers and other corporate records of the Debtor were destroyed in a 1988 fire at the offices of pre-bankruptcy counsel to the Debtor. Nonetheless, somehow the Debtor's certificate of incorporation survived and was produced in response to discovery requests.

15. On April 16, 1990 LaRosa Realty transferred $121,524 of advances it received from its Norstar credit line to Montclair Homes, Inc. (taped record, 11/15/95).

16. Frank LaRosa is an officer and controlling stockholder of 838 OCR (Certified Norstar Records). The Court notes that Frank LaRosa claimed that 838 OCR was controlled by Michael LaRosa and that he had no interest therein (Tr. 7/27/95, pp. 127–28). However, the defendants did not produce any stock certificates, minutes or other corporate records of 838 OCR to support the witness' testimony that he had no connection with 838 OCR. Furthermore, an inspection of the Montclair Homes, Inc. Deposit Book (Exhibit D), reveals that it also contains a record of the deposits made into 838 OCR, though Frank LaRosa testified that Michael LaRosa kept the books of 838 OCR and he himself had nothing to do with 838 OCR (Tr. 7/27/95, pp. 127–28).

17. 838 OCR is the successor in interest to the Debtor, in that (i) 838 OCR was incorporated in 1992 to act as the residential developing arm of LaRosa Realty; (ii) the operations of 838 OCR were to be identical to those of Montclair Homes, Inc.; (iii) on July 13, 1992, the Debtor's credit line was transferred into the name of 838 OCR (Certified Norstar Records).

18. 838 OCR is affiliated with LaRosa Realty because Frank LaRosa is in control of both entities (Certified Norstar Records).

19. On April 3, 1992, Montclair Homes, Inc. transferred $10,000 to 838 OCR, Frank LaRosa's newly formed company for no consideration (Exhibit D).

20. Montclair Homes, Inc., La Rosa Realty and 838 OCR all operated out of the same premises located at 838 Old Country Road, Westbury, New York (Tr. 7/27/95, pp. 103–108). All three corporations had the same telephone number and fax number (Tr. 7/27/95, pp. 103–108, 147).

21. Frank LaRosa kept the books and records of all of his businesses, including the Debtor, LaRosa Realty, and himself (Tr. 7/27/95, pp. 124–29). The Court notes that aside from some cancelled checks and bank statements, in the name of the Debtor, the Montclair Homes, Inc. Deposit Book, or the "black book" (Exhibit D), constitutes the entire books and records kept by Frank LaRosa for the Debtor for the period from April 30, 1981 (the date of incorporation) to March 24, 1993 (the date of the last entry). The black book records deposits only and does not contain any entries for monies paid out by the Debtor during the period from April 30, 1981 to March 24, 1993. The Court also notes that Frank LaRosa kept a record of deposits made into 838 OCR in the "black book" (Exhibit D).

22. In 1989, Sophie Goscienski commenced a state court action against the Debtor for breach of construction contract (Ch. 7 petition).[5]

23. On September 6, 1990, the Debtor repaid Norstar Bank the amount of $276,-092.36, although at the time it only owed $150,000 to Norstar (Canceled check No. 3141, contained in Exhibit 12). Testimony elicited at trial revealed that this payment included repayment of the LaRosa Realty credit line, as well.

24. On January 11, 1991, Frank LaRosa transferred $150,000 of the Debtor's funds to Barclay's Bank in payment of his own debt on the Frank and Margaret LaRosa home equity credit line (canceled check No. 3235, contained in Exhibit M). On May 23, 1991, Frank LaRosa transferred $100,000 of the Debtor's funds to Barclay's Bank in payment of his own debt on the Frank and Margaret LaRosa home equity credit line (canceled check No. 3330, contained in Exhibit M). On February 2, 1992, Frank LaRosa transferred $140,560 of the Debtor's funds to Barclay's Bank in payment of his own debt on the Frank and Margaret LaRosa home equity credit line (canceled check No. 1182, contained in Exhibit M).[6] There is no evidence

---

5. The date of commencement of the action has been determined by the index number assigned to the lawsuit by the Supreme Court of the State of New York, 21084/89.

6. In addition, the record shows 24 additional payments to Barclay's Bank during the period September 6, 1990 through October 2, 1992. These payments were in smaller amounts, totaling $34,333 altogether, and appear to be further

of any debt due to Barclay's Bank from the Debtor. Although the record shows that Frank LaRosa sometimes made transfers from the home equity line of credit to the Debtor, there are no underlying documents which characterize those transfers as loans, nor were any corporate actions taken or resolutions passed to suggest that they were loans rather than capital contributions (Tr. 7/27/95).

25. On January 18, 1991 Norstar Bank granted to "Frank LaRosa and Affiliated Companies" a credit limit of $250,000 under a "grid note"; $100,000 to LaRosa Realty and $150,000 to Montclair Homes, Inc. (Exhibit K). The loans were personally guaranteed by Frank and Margaret LaRosa and collateralized by real property owned personally by Frank and Margaret LaRosa and/or LaRosa Realty (Certified Norstar Records).

26. Between September 27, 1991 and April 8, 1992, Norstar advanced $150,000 to the Debtor under the grid note (Exhibit 12 and taped record, 1/19/96).

27. On June 5, 1992, a closing was held in connection with the sale of a residential property at 2 Lily Lane, Levittown, New York, at which the Debtor received $166,422.90 (Exhibit D).[7]

28. On June 5, 1992, the Debtor transferred $150,000.00 to Norstar Bank, in repayment of the advances under the grid note (canceled check No. 1402).

29. On June 15, 1992, an entry in the ledger of 838 OCR, also contained in the "black book", shows that the Debtor transferred $7,500.00 to 838 OCR (Exhibit D).

30. On July 13, 1992, Frank LaRosa transferred the Debtor's line of credit into the name of 838 OCR (Certified Norstar Records).

31. In August 1992, the Debtor transferred a total of $12,500.00 to LaRosa Realty (Exhibit D and Canceled Check Nos. 1428 and 1430, contained in Exhibit 12), allegedly for repayment of loans.

32. The Debtor was insolvent as of at least April 1, 1990 based on the fact that it had only $4,175.56 in its bank account and credit for $150,000. There was no evidence of the Debtor owning any other tangible property. At the same time, the Goscienski lawsuit was pending, claiming over $200,000 due from the Debtor. Defendants' Exhibit 10, which purports to be Debtor's financial statement for the year ending March 31, 1990, is a compilation limited to presenting information provided by management. Its prior accountant indicated that management elected to omit substantially all disclosures required by generally accepted accounting principles and, therefore, without further evidence, this Court finds that the financial statement for the year ending March 31, 1990 is worthless in regard to establishing what the Debtor owned at that time or what debts it had incurred. The same is true for the financial statement for the year ending March 31, 1989. Both of these financial statements fail to provide adequate evidence of the Debtor's solvency.

33. The Debtor did not undertake any new construction projects after June 1992 (Exhibit D), and by November 1992 there was less than $1,250 in the Debtor's bank account (Exhibit 12).

34. The Debtor filed a chapter 7 petition on December 16, 1993.

35. The Debtor lists no assets whatsoever on its bankruptcy petition.

36. As of the Petition Date, the Debtor owed Sophie Goscienski $233,440.00, plus post-judgment interest, attributable to a state court judgment entered on September 2, 1993 (Ch. 7 petition).

37. As of the Petition Date, there was an action pending against the Debtor in the New York State Supreme Court, Nassau County, by John Tagliaferro and three other plaintiffs, wherein they were seeking $189,-990.00 in damages for the negligent construction of a house located at 232 Division Avenue, Levittown, New York (Tr. 7/27/95, pp.

---

payments on the outstanding balance of the Frank and Margaret LaRosa home equity credit line.

7. According to the records kept by Frank LaRosa, this is the last property which the Debtor developed and resold before the filing of the Chapter 7 petition in December of 1993.

63, 70).[8] The plaintiffs in that action have claims against the estate in a yet undetermined amount. There may be other creditors. As this case was filed as a no asset case, parties listed as creditors were advised not to file claims.

38. Frank LaRosa, Margaret LaRosa, Michael LaRosa, LaRosa Realty and 838 OCR are all "insiders" of Montclair Homes, Inc., as defined in Section 101 of the Bankruptcy Code.

39. During the period September 6, 1990 through October 2, 1992, Montclair Homes, Inc. transferred a total of $1,154,211.94 to Norstar Bank, Barclay's Bank, and insiders of Montclair Homes, Inc. (amended complaint).

40. The evidence indicates that the only transfers which were repayments of bona fide loans to Montclair Homes, Inc. were (i) $150,000 of the $276,092.36 transferred by the Debtor to Norstar on September 6, 1990, plus interest as provided in the loan documents then in effect between Norstar and the Debtor; and (ii) $150,000 transferred by the Debtor to Norstar on June 5, 1992, plus interest as provided in the loan documents then in effect between Norstar and the Debtor.

41. This Court finds that any funds deposited into the Debtor from Frank LaRosa was a capital contribution to a corporation which never had its own capital except for loans from Norstar Bank.

### DISCUSSION

Plaintiff is acting here on behalf of the trustee, pursuant to Section 544 of the Bankruptcy Code. Pursuant to Section 544(a)(1), the trustee has the rights and powers of a hypothetical judgment lien creditor. The trustee can also proceed pursuant to Section 544(b), which provides in pertinent part that "[t]he trustee may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an [allowed] unsecured claim." 11 U.S.C. Sec. 544(b).

There are two issues in this case. The first question is whether the pre-petition transfers made by the Debtor amount to fraudulent transfers which can be avoided and recovered by the plaintiff for the benefit of the Chapter 7 estate.

■ The Court notes that the Debtor ceased all operations and permitted its corporate bank account to dwindle to less than $1,200 approximately 13 months prior to the filing of the bankruptcy petition,[9] one month beyond the statutory preference period for insiders. 11 U.S.C. Section 547(b). Thus, the trustee cannot avoid the transfers pursuant to this bankruptcy statute. Additionally, the trustee cannot proceed under Section 548(a) of the Bankruptcy Code because all of the transfers enumerated in the amended complaint occurred beyond the one year period required by that statute.

■ Plaintiff argues, however, that the transfers in question violate the NYDCL and are therefore voidable under New York law. Under the NYDCL, a creditor is permitted to trace a transferor's transactions back over six years. *Schwonke v. Banister,* 83 A.D.2d 752, 443 N.Y.S.2d 513 (App.Div., 4th Dep't, 1981). Pursuant to Section 544 of the Bankruptcy Code, the Trustee stands in the shoes of a judgment lien creditor as of the date of the filing of the petition and has the rights granted pursuant to the New York Debtor and Creditor Law. Thus, the Plaintiff is not time barred.

If the transfers are indeed fraudulent under New York law, these transfers are voidable and all monies transferred to any party defendant from the Debtor's account within six (6) years of the filing of the Petition are

---

8. Although the defendants intimated during Mr. Tagliaferro's cross-examination that the Supreme Court action had been dismissed, the documentary evidence shows that the action was dismissed as against Frank LaRosa and LaRosa Realty only, and that the action, entitled *John Tagliaferro, Joan Tagliaferro, Thomas Acosta & Valerie Acosta v. Montclair Homes, Inc.,* Index No. 013248/93, was pending against the Debtor in the Supreme Court, Nassau County, as of the Petition Date (Exhibit 13).

9. The Debtor's bank balance continued to decline during the next 13 months and, after January 1, 1993, was never much more than $100.

funds which the Trustee may recover for the benefit of this estate.

The second question is whether this Court should pierce the corporate veil and hold Frank LaRosa personally liable for the Debtor's obligations.

## A. Fraudulent Transfers

Plaintiff alleges that the pre-petition transfers which took place from January 1990 through October 2, 1992 amount to a scheme to defraud the creditors of Montclair Homes Inc. and violate numerous sections of the NYDCL.

■ The plaintiff has proved that the subject conveyances were fraudulent pursuant to Section 273 of the NYDCL. Section 273 provides as follows:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

N.Y.Debt. & Cred. Law Sec. 273 (McKinney 1990). This section is founded upon a theory that a transfer by an insolvent is fraudulent irrespective of any actual intent. *Feist v. Druckerman*, 70 F.2d 333 (2d Cir.1934). Transfers of property are deemed fraudulent as to creditors and are voidable as a matter of law, without regard to actual intent, if they are made (1) without fair consideration, and (2) the party making the transfer is insolvent or is rendered insolvent thereby. *Commodity Futures Trading Commission v. Probber Intern. Equities Corp.*, 504 F.Supp. 1154 (S.D.N.Y.1981). For purposes of Section 273 of the NYDCL, a creditor may trace a transferor's transactions back over six years. *Schwonke v. Banister*, 83 A.D.2d 752, 443 N.Y.S.2d 513 (App.Div., 4th Dep't, 1981).

■ First, the conveyances were made without "fair consideration", as defined in Section 272 of the NYDCL, which provides as follows:

> a. When in exchange for such property or obligation, **as a fair equivalent therefor, and in good faith,** property is con-

veyed or **an antecedent debt is satisfied,** or

> b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt an amount not disproportionately small as compared with the value of the property, or the obligation obtained.

N.Y.Debt. & Cred. Law Sec. 272 (McKinney 1990) (emphasis supplied). Here, the defendants argue that the conveyances which are the subject of the amended complaint satisfied the fair consideration requirement of Section 272(a) of the NYDCL, since each transfer consisted of the fair equivalent for an antecedent debt owed by Montclair Homes, Inc. to Frank LaRosa and the other defendants. However, there is no documentary evidence that the advances made to the Debtor by Frank LaRosa and other insiders constituted bona fide debts of Montclair Homes, Inc. Essentially, the advances were in the nature of capital contributions to finance the Debtor's day-to-day operations. Both Mr. LaRosa and Mr. Sandler testified that any time the Debtor needed money to finance a construction project, Frank LaRosa would infuse funds into the Debtor's bank account from the Frank and Margaret LaRosa home equity account and/or one of the LaRosa related entities, or sometimes take an advance from the Norstar line of credit (which was personally guaranteed by Frank and Margaret LaRosa). As Mr. LaRosa admitted, the Debtor did not enter into formal loan agreements with the LaRosa related entities, nor was Montclair Homes, Inc. authorized by corporate resolution to incur debt from insiders. Moreover, Mr. Sandler testified that, when the Debtor received proceeds from the sale of a house, Frank LaRosa would unilaterally decide whether to retain the money as working capital or to distribute the funds. When he decided upon a distribution, he alone decided which entity to repay, when he should do so and the amount of the distribution. For instance, when the Debtor sold its final property in June 1992, Frank LaRosa chose to use the sale proceeds to pay Norstar Bank, 838 OCR and LaRosa Realty, rather than other creditors of Montclair Homes, Inc. The payments to 838 OCR and LaRosa Realty constituted payments to in-

siders of Montclair Homes, Inc. Even the payment to Norstar benefited Frank LaRosa because the repayment of that loan satisfied his personal guarantee. In short, the transactions among the Debtor, Frank LaRosa and the other defendants were transfers among insiders and, therefore, lacked good faith. The element of "fair consideration" is not met when the good faith component of Section 272(a) is missing. *See Atlanta Shipping Corp., Inc. v. Chemical Bank,* 818 F.2d 240 (2d Cir.1987) (in general, repayment of antecedent debt constitutes fair consideration unless transferee is officer, director or major shareholder of transferor); *In re Checkmate Stereo and Electronics, Ltd.,* 9 B.R. 585 (Bankr.E.D.N.Y.1981), *aff'd* 21 B.R. 402 (E.D.N.Y.1982) (for purposes of New York law that there can be no fair consideration for transfer of property when good faith is lacking, good faith is required of both transferor and transferee; good faith may be lacking because of transferee's knowledge of transferor's unfavorable financial condition at the time of the transfer or because of a transferee's position as an insider with control over corporate finances).

Thus, all of the conveyances enumerated in the complaint (except those made to Norstar) were made without "fair consideration."

Second, the plaintiff proved that Montclair Homes Inc. was insolvent at the time the transfers enumerated in the amended complaint occurred and/or Montclair Homes, Inc. was rendered insolvent by such transfers. More specifically, this Court finds that the Debtor was insolvent as of April 1, 1990, prior to the transfers which are the subject of the amended complaint, which occurred during the period September 6, 1990 through October 2, 1992. Alternatively, the plaintiff proved that certain transfers enumerated in the amended complaint caused the Debtor's insolvency. Entries made in Frank LaRosa's "black book" (Exhibit D) show that on June 5, 1992 the Debtor received $166,422.90 from the sale of a house and that, in the period between June and August 1992, the Debtor transferred $150,000.00 to Norstar Bank, in repayment of the Norstar line of credit (per-

sonally guaranteed by Frank and Margaret LaRosa); the Debtor transferred $7,500.00 to 838 OCR, Frank LaRosa's newly formed corporation; the Debtor transferred a total of $12,500 to LaRosa Realty (a corporation controlled by Frank LaRosa); and, finally, Frank LaRosa transferred the Debtor's line of credit into the name of 838 OCR. Mr. Sandler, the defendants' own witness, testified that, in his opinion, the Debtor became insolvent on or about August 31, 1992. So, even if this Court had not made a finding that the Debtor was insolvent on April 1, 1990, the defendants' own witness confirmed that the transfers made in June, July and August 1992 caused the Debtor's insolvency. Thus, the plaintiff has established that Montclair Homes, Inc. was insolvent at the time of the transfers and/or was rendered insolvent thereby.

Consequently, the conveyances are fraudulent as to all creditors of Montclair Homes, Inc., pursuant to Section 273 of the NYDCL.

■ The plaintiff has also established that the conveyances enumerated in the amended complaint were fraudulent under Section 276 of the NYDCL. Section 276 provides as follows:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

N.Y.Debt. & Cre.Law Sec. 276 (McKinney 1990). To prevail in an action under Section 276, the plaintiff must establish that (1) the thing disposed of must be of value, out of which the creditor could have realized a portion of his claim; (2) it must be transferred or disposed of by the debtor; and (3) it must be done with intent to defraud. *Hoyt v. Godfrey,* 88 N.Y. 669 (1882). Under New York law, for purposes of an actually fraudulent conveyance under Section 276 of the NYDCL, actual intent to defraud must be proven by clear and convincing evidence. *United States v. McCombs,* 30 F.3d 310 (2d Cir.1994).[10]

---

10. The Court notes that this standard is more difficult to meet than the preponderance of the

evidence standard required to prove fraud under Section 523(a) of the Bankruptcy Code. *See*

In the instant case, plaintiff has shown, by clear and convincing evidence, that the thing disposed of was of value; namely, money (see canceled checks of the Debtor for the period September 6, 1990 and October 2, 1992). During this time period, Sophie Goscienski and other creditors could have realized a portion of their claim for the money transferred. The plaintiff has also shown, by clear and convincing evidence, that Montclair Homes, Inc., a debtor of Sophie Goscienski, made the subject transfers (see canceled checks of the Debtor for the period September 6, 1990 and October 2, 1992). Finally, the plaintiff has shown, by clear and convincing evidence, that the requisite fraudulent intent was present. Even in an intentional fraudulent conveyance case, intent does not have to be shown by direct evidence and is normally inferred from the circumstances surrounding the transfer. *Elgin Sweeper Co. v. Melson Inc.* 884 F.Supp. 641 (N.D.N.Y. 1995). Courts have used certain "badges of fraud" that circumstantially may infer actual intent, since the intent to defraud is rarely susceptible to direct proof. *In re Kaiser,* 722 F.2d 1574, 1582–83 (2d Cir.1983).

The *Kaiser* Court considered the following: (1) was the consideration received adequate or was there any consideration; (2) was the transferee a relative, close friend or associate of the debtor; (3) did the debtor retain possession, benefit and use of the property; (4) did the debtor's financial condition change after the transfer; (5) was a pattern established of certain types of transactions after the onset of financial difficulties; and (6) did the debtor transfer all or substantially all of his or her assets to a corporate entity that he or she controls. All of these badges of fraud are present in this case. The requisite intent may be proven by a "clear pattern of purposeful conduct." *In re Checkmate Stereo and Electronics, Ltd.,* 9 B.R. 585, 612 (Bankr.E.D.N.Y.1981), *aff'd,* 21 B.R. 402 (E.D.N.Y.1982).

The plaintiff in this case has shown that (1) the transfers were made without "fair consideration" as that term is defined in Section 272 of the NYDCL, as discussed above; (2) the transferees included Michael LaRosa, the son of Frank LaRosa, the Debtor's principal, and LaRosa Realty and 838 OCR, all "insiders" of the Debtor; (3) Frank LaRosa, the controlling stockholder of the Debtor, retained possession, benefit and use of the funds after the transfers; (4) the financial condition of the Debtor changed after the transfers, so that it became insolvent; (5) a pattern of transfers to, and for the benefit of, Frank LaRosa and LaRosa related entities was established soon after Sophie Goscienski filed her state court action; (6) Frank LaRosa transferred all or substantially all of the assets of Montclair Homes, Inc. to other corporate entities which he controlled and/or to banking institutions to whom *he* owed money. The Debtor did not owe any money to any bank other than Norstar Bank.

Although the defendants argue that the conveyances complained of in the amended complaint were made in satisfaction of various antecedent debts owed by the Debtor to Frank LaRosa, Michael LaRosa and various LaRosa related entities, there is no documentary evidence that prior advances made to the Debtor by Frank LaRosa, Michael LaRosa and the various LaRosa related entities were, in fact, loans, and not capital contributions. Moreover, Frank LaRosa transferred $10,000.00 of the Debtor's funds to LaRosa Realty on September 1, 1992, and $7,500.00 to LaRosa Realty on October 2, 1992, at a time when Mr. Sandler, the defendants' own witness, testified that the Debtor was insolvent. LaRosa Realty is wholly owned by Frank LaRosa, a director, officer and controlling stockholder of the Debtor. Transfers to a director, officer or controlling shareholder of an insolvent corporation are deemed to be lacking in good faith and are therefore presumptively fraudulent. *A.F.L. Falck, S.p.A. v. E.A. Karay Company, Inc.,* 722 F.Supp. 12 (S.D.N.Y.1989), *on rearg.,* 131 F.R.D. 46 (1990).

In addition, the Debtor was the defendant in Goscienski's breach of contract action for money damages in Supreme Court, Nassau County, in which a judgment was entered in Goscienski's favor in September 1993. While

*Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

that state court action was pending from 1990 through late 1992, the Debtor conveyed hundreds of thousands of dollars to Barclay's Bank (in payment of Frank LaRosa's home equity credit line), to Michael LaRosa, the son of the Debtor's principal, and to other LaRosa related entities.

While the state court proceeding was pending, the Debtor, by Frank LaRosa, rendered itself judgment proof by transferring virtually all of its assets to Barclay's Bank (to satisfy Frank LaRosa's home equity line of credit), to Norstar Bank (to satisfy the credit line extended to the Debtor and which was guaranteed personally by Frank and Margaret LaRosa), and LaRosa related entities. Then the Debtor filed a Chapter 7 petition, claiming it had no funds with which to satisfy the judgment.

Consequently, this Court finds that the plaintiff has established that the subject conveyances (except those to Norstar) were made with actual intent to hinder, delay, or defraud creditors, and are fraudulent as to the creditors of Montclair Homes, Inc.

In light of the foregoing determinations, the Court need not reach the remaining fraudulent transfer allegations plead in the complaint.

■ The plaintiff also seeks to recover attorneys' fees in this adversary proceeding. Section 276–a of the NYDCL provides as follows:

**Section 276–a. Attorneys' fees in action or special proceeding to set aside a conveyance made with intent to defraud.**

In an action ... brought by a creditor, receiver, trustee in bankruptcy or assignee for the benefit of creditors to set aside a conveyance by a debtor where such conveyance is found to have been made by the debtor and received by the transferee with actual intent as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, in which action or special proceeding the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall recover judgment, the justice or surrogate presiding at the trial shall fix the reasonable attorney's fees of the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors in such action ..., and the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall have judgment therefor against the debtor and the transferee who are defendants in addition to the other relief granted by the judgment. The fee so fixed shall be without prejudice to any agreement, express or implied, between the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors and his attorney with respect to the compensation of such attorney.

N.Y.Debt. and Cre.Law Sec. 276–a (McKinney 1990). To recover attorneys' fees under Debtor and Creditor Law, actual intent to hinder, delay or defraud must be established. *Marine Midland Bank v. Murkoff,* 120 A.D.2d 122, 508 N.Y.S.2d 17 (App.Div., 2d Dep't, 1986), *appeal dismissed* 69 N.Y.2d 875, 514 N.Y.S.2d 1029, 507 N.E.2d 322 (1987). Here, the Court has found, pursuant to Section 276 of the NYDCL, that Montclair Homes, Inc. made the subject conveyances, and the transferees received the Debtor's property, with actual intent to hinder, delay or defraud the creditors of Montclair Homes, Inc. Thus, pursuant to Section 276–a of the NYDCL, the Court can fix the reasonable attorney's fees of plaintiff's counsel, and the plaintiff shall have judgment therefor. *See Bartle v. Markson,* 299 F.Supp. 958 (N.D.N.Y.1969), *aff'd,* 423 F.2d 637 (2d Cir. 1970) (where officer and director of transferor corporation was found to have permitted fraudulent transfers of property with actual intent to defraud and hinder present and future creditors of transferor, trustee suing to recover amount of funds illegally diverted from transferor was entitled to recover counsel fees). In view of the foregoing, the Court will fix the attorney's fees of plaintiff's attorney in this action vis-a-vis the defendants, after receiving an appropriate fee application served pursuant to the Bankruptcy Code and Rules, and an opportunity to be heard by any party objecting thereto. Moreover, nothing herein shall be construed to affect the Order of this Court dated November 22, 1994, which entitles plaintiff's counsel to a contingency fee of one-third of the amount recovered for the benefit of the estate.

## B. Piercing the Corporate Veil

In view of the fact that the plaintiff has proved that the pre-petition transfers by the Debtor to Norstar, Barclay's Bank, Frank LaRosa and the LaRosa related entities were fraudulent conveyances under Sections 273 and 276 the NYDCL, the said transfers can be set aside and brought into the estate by the trustee pursuant to Section 544(b) of the Bankruptcy Code. The Court must now decide whether, based on the facts of this case, it is appropriate to pierce the corporate veil and hold Frank LaRosa personally responsible for the debts of Montclair Homes, Inc.

The general rule is that a corporation exists independently of its owners as a separate legal entity. *Morris v. New York State Dept. of Taxation and Finance,* 82 N.Y.2d 135, 140, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993). The shareholders of a corporation are exposed only to limited liability up to the amount of their investments and not for the debts or acts of the corporation itself. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 139 (2d Cir.1991); *Walkovszky v. Carlton,* 18 N.Y.2d 414, 417, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966). Courts will reluctantly disregard the corporate form and hold shareholders personally liable for the acts or debts of a corporation in the interests of justice and whenever necessary to prevent fraud or achieve equity. *Bangor Punta Operations, Inc. v. Bangor & Aroostook Railroad Co.,* 417 U.S. 703, 713, 94 S.Ct. 2578, 2584, 41 L.Ed.2d 418 (1974); *Walter E. Heller & Co. v. Video Innovations, Inc.,* 730 F.2d 50, 53–54 (2d Cir.1984); *Port Chester Elec. Constr. Corp. v. Atlas,* 40 N.Y.2d 652, 656–57, 389 N.Y.S.2d 327, 357 N.E.2d 983 (1976). The case law indicates that, above all, courts usually pierce the corporate veil where, as here, the owners of the corporation misuse the corporate form to accomplish their own personal affairs instead of the corporation's business.

To pierce the corporate veil and hold stockholders personally liable, the plaintiff must demonstrate that (1) the owners of the corporation exercised complete domination or control concerning the transactions at issue; and (2) such domination was used to commit a fraud or a wrong against the plaintiff which resulted in harm. *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988); *Morris,* 82 N.Y.2d at 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157.

Applying the principles set forth above to the facts of this case, it is apparent that Frank LaRosa was the alter ego of Montclair Homes, Inc. Factors tending to show domination and control include (i) absence of corporate formalities such as election of directors, issuance of stock and maintenance of corporate records, (ii) inadequate capitalization, (iii) use of corporate funds for personal rather than corporate purpose, (iv) overlapping ownership, officers, directors and personnel, (v) common office space, address and telephone numbers of corporate entities, (vi) the payment or guarantee of debts of the corporation by the owners or other related corporation. *Passalacqua Builders,* 933 F.2d at 139. *See also In re Casale,* 62 B.R. 889, 897–98 (Bankr.E.D.N.Y. 1986), *aff'd,* 72 B.R. 222 (E.D.N.Y.1987).

*All* of these factors are present in this case. (i) Testimony at trial showed that the Debtor never issued any stock; rarely, if ever, held any formal meetings; and never maintained any corporate minutes. (ii) Mr. Sandler testified that the initial capitalization of the Debtor was $1,000.00, and that throughout its corporate history Frank LaRosa caused money to flow in and out of the Debtor as needed to finance construction projects and repay advances under the Norstar Bank credit line. (iii) Testimony at trial showed that the funds of the Debtor were used to repay advances under the Frank and Margaret LaRosa home equity line of credit and to pay for personal items such as a boat. (iv) There was virtually a complete overlap in ownership of Montclair Homes, Inc., LaRosa Realty and 838 OCR, with Frank LaRosa as the controlling shareholder of each. He, his wife, Margaret, and son, Michael, were the only officers of the Debtor. (v) The Debtor, LaRosa Realty and 838 OCR all occupied the same office space and shared the same personnel, namely the LaRosa family and one

non-family employee who acted as Frank LaRosa's secretary.[11] In addition, it was established that all three companies had the same telephone and fax numbers. (vi) It was customary for Frank LaRosa to advance monies to the Debtor from the Frank and Margaret LaRosa home equity line of credit maintained at Barclay's Bank. Additionally, the Montclair Homes, Inc. line of credit at Norstar Bank was personally guaranteed by Frank and Margaret LaRosa and collateralized by their personal real estate holdings.

There may have been some limited "corporate separateness" among the LaRosa related companies, such as separate bank accounts. However, for the most part, Frank LaRosa and Michael LaRosa treated the Debtor, LaRosa Realty and 838 OCR as one entity through which they transferred assets and commingled monies for the benefit of themselves and the other LaRosa related entities. In fact, in July 1992, Frank LaRosa transferred the Debtor's credit line at Norstar Bank into the name of 838 OCR, using the same collateral that had secured the Debtor's credit line, namely real property owned by Frank and Margaret LaRosa. The Certified Norstar Records indicate that 838 OCR, which was formed to act as the residential development arm of LaRosa Realty, is the successor in interest to Montclair Homes, Inc. Nonetheless, on July 27, 1995, Frank LaRosa testified under oath that 838 OCR was his son's company, and that he was not a director, officer or shareholder thereof.

In short, the evidence shows that Frank LaRosa was the alter ego of the Debtor, whose finances and business practices he actively controlled and dominated. There was a unity of interest and control among Frank LaRosa, Montclair Homes, Inc., LaRosa Realty and 838 OCR, since they all worked in the same or related businesses and on the same construction projects.

■ Domination by particular shareholders by itself is insufficient to render those shareholders personally liable. The plaintiff must also show that the owners of the corporation, through their domination, committed a wrongful or unjust act against the plaintiff and abused the privilege of doing business such that the individual shareholders should be held personally accountable. *Gartner v. Snyder,* 607 F.2d 582, 586 (2d Cir.1979). The facts indicate conclusively that the defendants, primarily Frank LaRosa, manipulated the Debtor and gradually siphoned off the assets of the Debtor to satisfy the personal needs of Mr. LaRosa and the other defendants with the intent of removing any possible assets with which to pay Debtor's creditors. Only after all the funds in the Debtor's bank account were depleted and after waiting more than 12 months did the Debtor file a no asset Chapter 7 case. Consequently, the Court finds that, in the interest of justice, the corporate veil should be pierced and Frank LaRosa held personally responsible for the debts of Montclair Homes, Inc.

## CONCLUSION

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. Section 1334. This is a core proceeding under 28 U.S.C. Section 157(b)(2)(A) and (H).

For the reasons discussed herein, the Court finds that the transfers enumerated in the amended complaint (except for the transfers to Norstar Bank in the amount of $300,000) and interest thereon, are fraudulent conveyances under Sections 273 and 276 of the New York Debtor and Creditor Law. In addition, the Court finds that, pursuant to Section 276–a of the New York Debtor and Creditor Law, plaintiff shall have judgment for the reasonable attorney's fees of plaintiff's counsel herein, after due notice and further order of this Court. The Court further finds that, pursuant to 544 of the Bankruptcy Code, the trustee may avoid the aforementioned fraudulent transfers for the benefit of the creditors of the estate of Montclair Homes, Inc., and a judgment will be entered for any amounts so transferred. Finally, the Court finds that Frank LaRosa used the Debtor as an alter ego and, therefore, is personally liable for the debts and obligations of Montclair Homes, Inc. A

---

11. The testimony reveals that none of the LaRosa related entities had any full-time employees, except for Frank LaRosa's secretary. Real estate salespersons worked for LaRosa Realty, but considered themselves to be, and were paid as, independent contractors.

judgment will issue against Frank LaRosa for all sums ultimately determined to be due to the creditors of this Debtor's estate.

The Trustee shall send a notice to all creditors and parties-in-interest to file a claim within thirty (30) days and fixing a date for a hearing to determine the amount of allowed claims.

SETTLE AN ORDER in accordance with this decision within seven (7) days of the date hereof.